# IN THE UNITED STATED DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JANE DOE 1 & JANE DOE 2, individuals, | Case No: _____ |
| Plaintiffs, | |
| vs. | JURY TRIAL DEMANDED |
| XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive, | |
| Defendants. | |

## COMPLAINT

Come now Plaintiffs JANE DOE 1 and JANE DOE 2 and demand a jury trial and plead as follows:

## JURISDICTION AND VENUE

This is a civil action between citizens of different states.  This court has original jurisdiction pursuant to Title 28 of the United States Code, Section 1332 – Diversity of Citizenship with an amount in controversy exceeding the sum or value of $75,000.

Venue within this Judicial District is proper pursuant to Title 28 of the United States Code, Section 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims alleged herein occurred within this judicial district.

## PARTIES

1.      Plaintiffs, JANE DOE 1 and JANE DOE 2 ("Plaintiffs"), reside in London, England, and have two children, A.W. and B.W., who were both conceived as a result of their purchase of semen from Defendants Xytex Corporation and Xytex Cryo International LTD.

2.      Defendant Xytex Corporation ("Xytex" or "Xytex Corporation") is a corporation with its principal place of business in Atlanta, Georgia.  The Xytex Corporation is a for-profit seller of human semen.  All Plaintiffs acquired human semen for artificial insemination, and at all times relevant herein, all Plaintiffs were sold human semen by Defendant Xytex Corporation.

3.      Defendant Xytex Cryo International LTD ("Xytex International") is a corporation organized and existing under the laws of the state of Georgia.  Xytex International is a business that, at all times relevant, sold human semen to the Plaintiffs through its subsidiary, Defendant, Xytex Corporation.  The selling and promotion of such human semen included, but was not necessarily limited to, the testing, collection, promotion, advertising, marketing, sales and distribution of donor semen.  Additionally, Xytex International, through Defendant Xytex Corporation,

supervised and coordinated the evaluation and selection of semen donors, the collection of which was advertised, marketed, sold, and promoted as a carefully curated group of extraordinarily smart, educated, and healthy persons.

4.      Defendant, Mary Hartley, and Does 1 through 10, are, and were at all times relevant herein, employees, agents, owners, and/or directors who worked at, or were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.  Defendant Mary Hartley, and Does 1 through 10, also recruited Donor #9623 Aggeles, and promoted Donor #9623 Aggeles to all Plaintiffs through various mediums, on various dates, in various ways.

5.      Defendant, J. Todd Spradlin, and Does 11 through 15, are, and were at all times relevant herein, employees, agents, owners, directors, and/or doctors, physicians, medical professionals, examiners, and assistants who were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.

6.      Defendants, Does 16 through 20, are, and were at all times relevant herein, distributors of donor semen, and/or companies, entities, or corporations that assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

7.      Defendants, Does 21 through 25, are, and were at all times relevant herein, persons who assisted the Xytex Corporation, and Xytex International, in

selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

8.      Plaintiffs do not know the true names of the defendants sued herein as Does 1 through 25, inclusive.  Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused injuries and damages to all Plaintiffs as set forth herein.

9.      All Defendants herein acted as the agent, servant and employee and/or in concert with each of the other said Defendants in doing the acts herein alleged.

## FACTUAL ALLEGATIONS

## I.      INTRODUCTION.

10.      The factual allegations section of this complaint will serve as a chronological presentation of the ways in which the Plaintiffs were injured and deceived by the Xytex Corporation.  It will also seek to shed light on the despicable behavior of the Xytex Corporation. Xytex continues to act with callous disregard for the safety of those who are exposed to its products, and, in its unchecked and unregulated position, it will continue to disrupt and destroy innocent lives if it not held accountable for its conduct.

11.      In this case, the Xytex Corporation sold all of the Plaintiffs sperm from Xytex Donor #9623, James Christian Aggeles, a diagnosed schizophrenic and a convicted felon.  James Christian Aggeles completely fabricated his application to

become a Xytex sperm donor, and the Xytex Corporation, and the other Defendants herein, actually assisted Mr. Aggeles in falsifying the information that was presented to the public as true.

12.     Since the very beginning, before James Christian Aggeles ever went to the Xytex office to fill out his Xytex sperm donor application on October 18, 2000, there were easily accessible, irrefutable, medical documents that proved that he had **already** been diagnosed by the medical professionals at Atlanta Regional Hospital, and the Northwest Georgia Regional Hospital, with Schizophrenia, Narcissistic Personality Disorder, a drug induced psychotic disorder, and significant grandiose delusions.

13.     Additionally, James Christian Aggeles did not have even one college degree when he applied to become a Xytex sperm donor on October 18, 2000, and he did not actually earn a college degree until 2015.  Nevertheless, the profile for Donor #9623, during all times relevant herein, declared that James Christian Aggeles had a Bachelor's Degree, a Master's Degree, and that he was working towards his Ph.D. in artificial intelligence.  The Xytex Corporation, and other Defendants, did absolutely nothing to investigate the educational claims that James Christian Aggeles made when he applied to become a Xytex sperm donor.  A simple phone call to the relevant universities would have sufficed, but the Xytex Corporation did nothing.  Instead of investigating Mr. Aggeles' claims regarding his level of

education, the Xytex Corporation decided to promote Donor #9623 as a highly educated person, with a 160 IQ – that was completely invented by the Xytex Corporation.

14.     Furthermore, the Xytex Corporation made no effort to investigate Mr. Aggeles' arrest and conviction history.   Mr. Aggeles committed a residential burglary in 2005, which was **years before** the Xytex Corporation sold sperm to the Plaintiffs.   Mr. Aggeles spent 8 months in custody for that crime, and this information was all public record, easily accessible, and irrefutable.   Nevertheless, the Xytex Corporation never made any effort to determine if it was selling the sperm of a convicted burglar to the unsuspecting persons that it had declared to protect, and fully inform.   Instead of conducting an actual investigation into the claims made by James Christian Aggeles, Xytex promoted Donor #9623 as one of their best donors. Despite all of the evidence that was to the contrary, and publicly accessible, Xytex promoted James Christian Aggeles as a man of high integrity who was extremely intelligent, and incredibly educated.

15.     Despite all of this, the Xytex Corporation, and other Defendants, unceasingly promoted the sperm of Donor #9623, James Christian Aggeles, to such incredible extent that he now, by their own admission, is the biological father of at least 36 children.   The mental illnesses that James Christian Aggeles suffers from are genetic, hereditary, and are passed from one generation to the next.   Nevertheless,

the Xytex Corporation has assumed no responsibility in that it has done absolutely nothing to warn affected parents that schizophrenia may develop in their children, and it has provided no help whatsoever to the parents who are now incurring extraordinary medical and financial expenses associated with the mental illnesses that are developing in their children.  After this brief introduction, the factual allegations section will now focus on what Xytex said it would do, what actually happened, and what Xytex has done since the truth about Donor #9623, James Christian Aggeles, was been fully exposed.

## II.    WHAT THE XYTEX CORPORATION SAID IT WOULD DO.

16.    Xytex International, through its subsidiary, the Xytex Corporation, sells human semen for the purposes of artificial insemination.  The Xytex Corporation's website declares that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention. Additionally, the website proclaims that the Corporation's "FDA-mandated screening and testing also ensures our donors' continued good health."  The screening process is so thorough that a mere "1 percent of the men that inquire about being a donor candidate are evaluated," and, ultimately, "[f]ewer than 5 percent of the candidates become donors."

17.     The message that the Xytex Corporation presents regarding donor screening is exceedingly clear - Xytex does everything it can to carefully scrutinize the medical and social history of its donors, because, as Xytex alleges, it wants its "clients to make the most informed decision possible when selecting a donor." Xytex declares to us that it is "about people and creating families," and that it wants its purchasers "to receive the best possible match to a Xytex donor."  This is the way Xytex presents itself to the general public.

### A.     THE REPRESENTATIONS MADE BY XYTEX REGARDING EXAMINATION AND QUALIFICATION OF SPERM DONORS.

18.     The website for the Xytex Corporation makes the following assertions, upon which all Plaintiffs relied, regarding the examination, screening, and qualification of its sperm donors:

(a)   Less than 5% of applicants actually become Xytex sperm donors.

(b)   <u>All applicants</u> go through the same <u>rigorous qualification procedure</u>.

(c)   Applicants are subjected to a <u>thorough initial evaluation</u>, and they are subsequently required to submit to "periodic updates throughout the year."

(d)   <u>Trained counselors</u> subject <u>all applicants</u> to <u>extensive interviews</u> that are focused on the applicants' personality, behavior and health.

(e)   Applicants undergo a <u>comprehensive physical exam</u> for physical abnormalities and evidence of infectious diseases, and samples of applicants' semen, urine, and blood are collected for laboratory analysis.

(f)   The Xytex <u>medical director reviews all of the medical information</u> in a process that takes about two months to complete.

(g)   The process of <u>qualifying a donor is very intense and arduous,</u> generating a lot of medical, psychological, genetic and social information about donors and their families.

(h)   Xytex does more than meet its professional and ethical responsibilities, as the quality of its <u>clinical services</u> are <u>validated by state and national governmental agencies</u>.

(h)   All Xytex donors "<u>are enrolled in</u> or <u>have graduated from</u> some of <u>the country's premier universities and medical schools</u>."

(i)   When a donor is participating in the semen donation program, he must <u>submit to repeated lab testing</u> for infectious diseases.

(j)   Every six months, donors are subjected to a <u>physical examination</u>, and they are required to <u>update their medical history</u>.

(k)   If there is any change in a donor's status, the <u>donor's profile is updated</u> with the new information.

(l)   When Xytex "<u>learns new information</u> about a donor (<u>either from the donor or from a recipient of his semen</u>) that is deemed medically significant by the Medical Director, <u>a notice is sent</u> to the inseminating doctor and <u>to any patient who used semen from the donor</u>."

19.     These statements from Xytex, included as part of paragraph 24 above, constitute some of, but not all, of the representations upon which Plaintiffs relied in choosing to purchase sperm from the Xytex Corporation.

## III.   WHAT XYTEX ACTUALLY DID – THE RECRUITMENT AND PROMOTION OF DONOR #9623, JAMES CHRISTIAN AGGELES.

20.     Prior to even considering selling his sperm to Xytex, James Christian Aggeles had been hospitalized, as an adult, for mental health reasons on at least two separate occasions.  During these hospitalizations, which sometimes lasted for more than two weeks, the medical staff at Atlanta Regional Hospital and Northwest Georgia Regional Hospital diagnosed Mr. Aggeles with psychotic schizophrenia, Narcissistic Personality Disorder, and significant grandiose delusions.  He was prescribed anti-psychotics, including Zyprexa and Depakote.

21.     Subsequent to these mental health hospitalizations and diagnoses, on October 18, 2000, James Christian Aggeles went to the Xytex office in order to make money selling his sperm.  After dropping out of school, he saw it as a fairly easy way to generate income between waiting tables and working as a janitor.  On his first visit, Mr. Aggeles told Defendant Mary Hartley, a Xytex representative, that he

thought his IQ was about 130, but Mary Hartley suggested to him that he was a genius with an IQ of about 160.  She also told him that more educated donors did well selling their sperm, and that Xytex was used to donors with higher education. James Christian Aggeles filled out a questionnaire . . . and from there on out, and for all times relevant herein, the profile for Xytex sperm Donor #9623 showed that he had an IQ of 160, multiple college degrees, a clean mental health history, and no criminal background.  Again, for all times relevant herein, Xytex or any of its employees or agents could have conducted a simple internet Google search and discovered through publicly accessible, indisputable, medical and professional documents that James Christian Aggeles was a diagnosed Schizophrenic, and a convicted felon with no education.

22.    Mr. Aggeles, by his own admission, lied about his mental health history, and his education when he filled out the Xytex questionnaire, but he was never questioned by anyone at Xytex.  He was encouraged to tell lies, and bolster his intelligence and education levels by Defendant Mary Hartley.  The questionnaire was falsified, and a physician gave Mr. Aggeles a 10-minute physical examination, during which no physical or mental health history was discussed.  Approximately 2 weeks later, James Christian Aggeles, now Donor #9623, was approved to be a Xytex sperm donor, and he started donating sperm immediately – even though the

Xytex website claims that the Xytex "medical director reviews all of the medical information in a process that takes about two months to complete."

23.     When Mr. Aggeles was a Xytex sperm donor, he was hospitalized for mental health reasons and arrested on numerous occasions.  Publicly accessible documents unquestionably proved, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, that he had a series of arrests for burglary, trespassing, DUI, and disorderly conduct.  Also, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, he had been hospitalized several times for severe suicidal outbursts and psychotic episodes.  In 2002, Mr. Aggeles was placed on full Social Security Disability for his mental illnesses, he was diagnosed as having schizophrenic symptoms, and **he was found to be disabled**.  During this time, Mr. Aggeles was selling his sperm to the Xytex Corporation, and Xytex was promoting him as a healthy, intelligent, and highly educated donor.

24.     From the year 2000 to the year 2016, and throughout that period, the Xytex Corporation, and other Defendants, relentlessly sold and promoted the sperm of Donor #9623, James Christian Aggles.  As mentioned above, Mr. Aggeles is the father of at least 36 children due to his sperm being sold by the Xytex Corporation. The sperm of Donor #9623 was successfully inseminating women, and it therefore sold well.  The Xytex Corporation had a commercial motive to sell Mr. Aggeles' sperm, and it pursued that motive by promoting and selling the sperm of Donor

#9623 irrespective of whether or not he was a suitable sperm donor.  In these promotions, the Xytex Corporation, and all of the other Defendants referenced in this complaint, declared in their websites and materials, and in the statements that they made directly to all Plaintiffs, that James Christian Aggeles had the following characteristics:

- He had a Bachelor's Degree.

- He had a Master's Degree.

- He was working towards attaining his Ph.D. in Neuroscience Engineering.

- He had an IQ of 160.

- He had an impressive health history.

- He was one of their most popular donors.

- He was so popular that his sperm was rarely available.

- His child and adult photographs were authentic.

25.     The defendants made these representations to the plaintiffs, and the plaintiffs reasonably relied on them to their detriment, even though the defendants, notwithstanding their proclamations regarding their "unsurpassed quality controls," did absolutely nothing to verify the validity of the representations they were making about Donor #9623.

26.     In fact, the truth about Donor #9623 was very different from what the defendants represented about him.  In a recent interview, Donor #9623 stated that:

- He first went to the Xytex office in late 2000 in order to make money selling his sperm.

- When he first visited the Xytex office, he filled out a basic Questionnaire, but he was not asked any follow-up questions or any questions intended to verify his answers, and he was in the Xytex office for a grand total of 30 minutes.

- He was never asked for his medical records.

- He was never asked to sign a release for his medical records.

- He was never asked about his mental health history.

- He never spoke to a psychologist or psychiatrist representing Xytex.

- He specifically lied about his mental health history on the Questionnaire – as he had actually been hospitalized for mental health reasons on two separate occasions, and had been prescribed anti-psychotics, including Zyprexa and Depakote.

- He was never asked about his criminal history.

- He was never asked to provide a driver's license, or any other proof of identification.

- He lied about his education. He said that he had a BS from the University of Georgia, even though he did not; he said that he had a Masters Degree from the University of Georgia, even though he did not; he said that he was enrolled in a Ph.D. program in Artificial Intelligence, even though he was not.

- He went to the Xytex office in Atlanta to sell his sperm, and his main point-of-contact, for almost 14 years, was Defendant Mary Hartley.

- He told Mary Hartley that he thought his IQ was 130, and Mary Hartley told him that he was probably a genius with an IQ of 160. Mary Hartley told him that intelligent donors, with high levels of education, did well selling their sperm.

- He was surprised that Xytex never asked him to validate his educational claims.

- He was approved to become a sperm donor after his very first visit to the Xytex office.

- In 2014, after a lawsuit was filed against the Xytex Corporation that concerned Xytex sperm Donor #9623, Mr. Aggeles provided Xytex with fake graduation certificates, and Xytex accepted the fake graduation certificates.

- To his knowledge, Xytex has never made any attempt to verify his educational history in any way.

- He has been diagnosed with schizophrenia.

- He is a convicted felon.

- He attained his first, and only, college degree in May of 2015. Before that, he did not have any college degrees.

27.     Notwithstanding these facts, the Xytex Corporation promoted Donor #9623 as a highly educated, and extremely intelligent and thoughtful man, with a

perfect health history.  All of the above information was readily available to the Defendants, and easily accessible to them, and yet they utterly failed to conduct any form of investigation into the claims made by Donor #9623.  For example, a simple phone call to the University of Georgia would have proven that Donor #9623 completely lied about his education on the Questionnaire.  A simple Google search would have revealed Mr. Aggeles arrest history, and the publicly accessible documents that then showed, as early as 2002, that Mr. Aggeles had been arrested and hospitalized for mental health reasons, and that he had been diagnosed with serious mental illnesses.  In failing to conduct any investigation whatsoever, while simultaneously peddling the notion that their procedures for donor screening were rigorous and comprehensive, the Defendants acted with completely callous disregard for the safety of all Plaintiffs, and the children that were conceived as a result.

28.    The credentials for Donor #9623, James Christian Aggeles, were completely falsified and incorrect, but Xytex, and other Defendants here, such as Mary Hartley and James Spradlin, also promoted him by telling Plaintiffs that Donor #9623 was one the most popular donors in the Xytex sperm donor panel, and they told Plaintiffs that Donor #9623 was so popular that his sperm was rarely available. The facts pertaining to the Plaintiffs are represented below.

## IV.   JANE DOE 1 & JANE DOE 2.

29.     Jane Doe 1 and Jane Doe 2 are a same-sex couple, and they reside in England.  Jane Doe 1 and Jane Doe 2 heard about Xytex through a friend, and starting searching for potential donors on the Xytex website.

30.     In 2011, Jane Doe 1 and Jane Doe 2 first saw Donor #9623's profile on the Xytex website, and they chose him as their donor because he "ticked every single box."  He was represented to be healthy, very educated, and his profile stated that he had an IQ that was well above average - 160.  They describe the process of choosing a donor as one of, if not the most, important decisions of their lives.  They scoured the Xytex website, and they were led to believe that Xytex conducted rigorous medical testing and screening of the donors.

31.     To verify that all of the information on the Xytex website about Donor #9623 was actually true, Jane Doe 1 and Jane Doe 2 called Xytex directly, and they also engaged in a series of emails with Xytex employees.  In those phone calls and emails, the Xytex employees told Jane Doe 1 and Jane Doe 2 that Donor #9623 was one of the most popular Xytex sperm donors, and that his sperm was rarely available.  Shortly after those exchanges, Jane Doe 1 and Jane Doe 2 purchased the sperm of Donor #9623 from the Xytex Corporation.

32.     Thereafter, sperm from Donor #9623 was introduced into Jane Doe 1, and she gave birth to A.W. on February 28, 2012.  Approximately two and a half

years later, sperm from Donor #9623 once was again introduced into Jane Doe 1, and she gave birth to B.W. on February 22, 2015.

33.     On July 27, 2014, when Jane Doe 1 and Jane Doe 2 were about 3-months pregnant with their second child, B.W., they were contacted by Angela Collins, a Canadian woman who had also been inseminated with sperm from Donor #9623.  Ms. Collins told them the truth about Donor #9623, and that most, if not all, of the representations that Xytex and its employees had made about Donor #9623 were not true. They discovered that their sperm donor, Xytex Donor #9623, was a mentally ill felon.  They learned that Donor #9623 was schizophrenic, which is genetic and hereditary, thereby exposing their children to the most debilitating of mental illnesses.  They learned that Donor #9623 had dropped out of college, and that he held no degrees whatsoever.  They learned that Donor #9623 had pled guilty to residential burglary – a serious and violent crime, and a felony in most states. They learned that the photos of Donor #9623 had been altered to remove a large facial mole.  All of this information was easily accessible through a completely rudimentary online search, as Donor #9623, his mother, and his father provided it all on websites such as Facebook, YouTube, and elsewhere.

34.     As a result of the conduct of all of the Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 sustained injuries in the form of physical and emotional pain and suffering.

35.     As a further result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 were caused to expend money and suffered financial loss as a consequence.

36.     As an additional result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 have been required to, and will be required to, expend funds to evaluate and care for their children to ensure that should they become schizophrenic, they will have the best care possible, and that, should their schizophrenia develop, they will be diagnosed and treated so as to prevent further injury to Jane Doe 1 and Jane Doe 2.

## V.     WHAT XYTEX HAS DONE SINCE THE TRUTH ABOUT JAMES CHRISTIAN AGGELES WAS EXPOSED.

37.     Although the Xytex website declares that the Corporation is all about people and creating families, and although it asserts that Xytex informs sperm recipients when something significant about their Xytex sperm donor has come to light, Xytex has not told the truth about James Christian Aggeles to anyone who received his sperm.

38.     In fact, after Xytex was alerted to publicly accessible documents that unquestionably proved that James Christian Aggeles was a schizophrenic with an extensive arrest history, the Xytex Corporation and its representatives and employees continued to sell and promote sperm from Donor #9623.  Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for Xytex, stated in an e-

mail, on **January 11, 2016**, that he had "no information to confirm that Donor 9623 has schizophrenia." Defendant Spradlin also said, in the same email, that it "would be irresponsible of Xytex to notify clients of unsubstantiated claims." Defendant Spradlin made these statements despite the fact that publicly accessible, irrefutable, verified medical documents unquestionably proved that Donor #9623, James Christian Aggeles, was a diagnosed schizophrenic. The Xytex Corporation, and other Defendants here, have all refused to concede the truth about James Christian Aggeles, and they have recklessly pursued their commercials motives without any consideration for the safety of the Plaintiffs, or their children.

39.    Not only has the Xytex Corporation refused to disseminate the truth about James Christian Aggeles, and help the recipients of his sperm, it continued to sell the sperm of Donor #9623 after the his arrest history and mental illnesses came to light. All the while, publicly accessible, irrefutable documents unquestionably proved that Donor #9623 was a convicted burglar with a series of mental health illnesses. Nevertheless, the Xytex Corporation has recklessly pursued its commercial motives without any consideration for the lives it was destroying, and this was done in conscious disregard for the safety of the public, and the persons who purchased sperm from Donor #9623.

40.    Rather than help the persons who received sperm from Donor #9623, and their children who were conceived as a result of the sperm received from Donor

#9623, the Xytex Corporation has vowed to "vigorously defend itself." If the Xytex Corporation, and all other Defendants here, are never held accountable for their reckless, callous, and injurious behavior, they will continue to misrepresent the truth and destroy innocent peoples' lives with impunity.

## <u>FIRST CAUSE OF ACTION</u>
### <u>(Fraud)</u>
### AGAINST ALL DEFENDANTS

41.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

42.     In making the representations set forth herein, defendants knew them to be false and made them with the intent of inducing all Plaintiffs to rely upon said representations and to purchase the sperm of Donor #9623.

43.     All Plaintiffs reasonably relied on defendants' representations in deciding to purchase sperm from Xytex, and, in particular, in deciding to purchase sperm from Donor #9623.

44.     Had all Plaintiffs known the true facts, all Plaintiffs would not have purchased sperm from defendants, and all Plaintiffs have been harmed as a result of defendants' deceit and fraud.

45.     All Defendants, and each of them, acted with fraud, malice and oppression and all Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against all DEFENDANTS as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### AGAINST ALL DEFENDANTS

46.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

47.     Defendants represented to Plaintiffs that the representations set forth herein were true when they were not true and in so doing, defendants had no reasonable grounds for believing them to be true when they made the representations in that defendants had not made reasonable inquiry to ascertain their truth.

48.     Defendants intended that all Plaintiffs rely on said representations and all Plaintiffs reasonably relied on said representations and said reliance was a substantial factor in causing all Plaintiffs' harm.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## THIRD CAUSE OF ACTION
### (Products Liability/Strict Liability)
### AGAINST ALL DEFENDANTS

49.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

50.     The semen sold and supplied by defendants, and each of them, was defective and unsafe at the time it was distributed and used by all Plaintiffs in that it was defective as it contained genetic material about which no warnings were given. These defects caused serious injuries to the user when used as intended and in a foreseeable manner and defendants knew it would be used without inspection for decades.

51.     The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or scientifically knowable at the time of distribution.  The defendants and each of them failed to warn of potential injury and the statistical likelihood that offspring produced by the semen would develop psychosis.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (Products Liability/Negligence)
**AGAINST ALL DEFENDANTS**

52.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

53.     At all times herein mentioned, defendants, and each of them, had a duty to properly test, analyze, inspect, research, distribute, evaluate, review,

recommend and provide proper warnings and sell the aforesaid product for its intended and approved use.

54.     At all times relevant herein mentioned, defendants, and each of them, knew that the product was of such a nature that if it was not properly tested, inspected, labeled, distributed, reviewed, evaluated, marketed, promoted, and recommended, it was likely to injure users.

55.     Defendants and each of them breached their duty by negligently and carelessly recommending, promoting, failing to test, failing to review, failing to evaluate, failing to inspect, and failing to research and acting negligently as set forth above and thereby caused all Plaintiffs' injuries and damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)
### AGAINST ALL DEFENDANTS

56.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

57.     Defendants, and each of them, made representations about the quality of the semen being sold to all Plaintiffs, and presented themselves as experts in the determination of quality and reliability of the said semen, and thereby created a warranty through their oral and written representations.

58.     Said defendants breached their warranty and said breach caused all Plaintiffs losses.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty)
### AGAINST ALL DEFENDANTS

59.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

60.     Defendants, and each of them, were the sellers of the semen and had reason to know the purpose to which it would be put by all Plaintiffs and that all Plaintiffs were relying upon said defendants' expertise, and all Plaintiffs so relied to their detriment and sustained the losses set forth herein.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Battery)
### AGAINST ALL DEFENDANTS

61.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

62.     Defendants, and each of them, perpetrated batteries upon Jane Doe 1. Defendants, by selling the sperm of a person who was not the person defendants said

he was, and not the person Jane Doe 1 understood him to be, thereby caused Jane Doe 1 to be inseminated, twice, with the semen of a person to whom she would not have consented.  These actions amount to nonconsensual contacts, and are thus, batteries.

63.     In committing batteries upon Jane Doe 1, defendants, and each of them, acted intentionally and with malice and with conscious disregard for the health and safety of Jane Doe 1, and the general public, thereby entitling the Plaintiffs to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### EIGHT CAUSE OF ACTION
### (Negligence)
### AGAINST ALL DEFENDANTS

64.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

65.     In doing the acts herein alleged, defendants and each of them, acted carelessly and negligently and caused all Plaintiffs injuries and damages thereby.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## **NINTH CAUSE OF ACTION**
### **(Unfair Business Practices)**
### **AGAINST ALL DEFENDANTS**

66.    All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

67.    Defendants, and each of them, acted in violation of the Georgia Fair Business Practices Act by their unfair and deceptive acts and practices.  These acts included, but were not limited to, representing that certain goods and services, e.g. semen and evaluation of donors, had characteristics and benefits that they did not have, and that the semen donor in question had characteristics that he did not actually have.  Defendants thereby represented that their goods and services were of a particular standard, when they were actually of another standard altogether.

68.    In compliance with the said Act, Plaintiffs sent a letter demanding relief and informing defendants that they would seek fees and costs as permitted, injunctive relief and monetary damages and requested cessation of their deceptive business practices, removal of sperm Donor #9623 from their donor list, and increased vigilance and review of donors and a medical monitoring fund for children of Donor #9623.

69.    The violations of said Act entitles all Plaintiffs to punitive damages.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## TENTH CAUSE OF ACTION
### (Specific Performance)
### AGAINST ALL DEFENDANTS

70.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

71.     The Plaintiffs are entitled to specific performance because there was (1) a legally enforceable agreement between all Plaintiffs and the Xytex Corporation, which was sufficiently certain in its terms; there was (2) adequate consideration for the agreement, and it was a just and reasonable agreement; the (3) Plaintiffs, and each of them, tendered their performances by purchasing human sperm from the Xytex Corporation; the (4) Defendants breached the agreement because they have failed to honor to their promise to disseminate, to sperm purchasers, significant information that is discovered about a donor; and the (5) Plaintiffs have no adequate remedy at law because, in order to effectively treat and care for their children, they need to know as much as possible about James Christian Aggeles, Donor #9623. However, the Plaintiffs cannot effectively treat their children while the Defendants refuse to disseminate what they actually know to be true about James Christian Aggeles.

72.     Before the Plaintiffs purchased sperm from the Xytex Corporation, the Xytex Corporation agreed to disseminate significant new information that it learned or discovered about a donor.  Notwithstanding this promise, and the facts

that have come to light regarding Xytex Donor #9623's mental health issues, criminal issues, and lack of secondary education, the Xytex Corporation has repeatedly refused to disseminate any of the information that can easily be verified by publicly accessible documents.

73.     Thus, the Defendants have breached the agreement, and because the Plaintiffs have no adequate remedy at law, the Defendants should be required to perform their obligations under the legally enforceable agreement and disseminate what they know about James Christian Aggeles to any and all purchasers of sperm that came from Xytex Donor #9623.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (False Advertising)
### AGAINST ALL DEFENDANTS

74.     All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

75.     Defendants, and each of them, presented false or misleading information about James Christian Aggeles, Donor #9623, that was likely to cause confusion, mistake, or deception, and they misrepresented the nature, characteristics, and qualities of the product they provided and sold to the Plaintiffs, namely, sperm from James Christian Aggeles, Xytex Donor #9623.

76.     The Plaintiffs were injured by these deceptive advertising practices, and now seek relief for their injuries.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE PLAINTIFFS SEEK RELIEF AS FOLLOWS:

1.     Pain and suffering according to proof;

2.     Financial losses according to proof;

3.     Attorneys fee;

4.     Costs of suit;

5.     Medical Monitoring Fund;

6.     Injunctive Relief; and

7.     Punitive Damages

**<u>JURY DEMAND</u>**

Plaintiffs each demand trial by struck jury on all issues so triable.


DATED:  May 4, 2016

                                                            /s/ James F. McDonough, III.
                                                            JAMES F. MCDONOUGH, III.
                                                            GA Bar No.:  117088
                                                            HENINGER GARRISON DAVIS
                                                            3621 Vinings Slope, Suite 4320

Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332

W. Lewis Garrison, Jr.
lewis@hgdlawfirm.com
Taylor C. Bartlett*
taylor@hgdlawfirm.com
HENINGER GARRISON DAVIS
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332


NANCY HERSH*
BRENDAN GANNON*
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

*PHV's forthcoming

Attorneys for Plaintiffs
JANE DOE 1 and JANE DOE 2

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing has been prepared using Times New Roman 14 point font.

This 4th day of May 2016.

/s/ James F. McDonough, III.
JAMES F. MCDONOUGH, III.
GA Bar No.:  117088
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332