IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE 1
INDIVIDUAL, et al.,

    Plaintiffs,

      v.

XYTEX CORPORATION
a Georgia Corporation, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-1453-TWT

## OPINION AND ORDER

This is a wrongful birth case. It is before the Court on the Defendants Xytex Corporation, Xytex Cryo International LTD, Mary Hartley, and Todd Spradlin's Motion to Dismiss [Doc. 12]. For the following reasons, the Defendants' Motion to Dismiss is GRANTED.

## I. Background

Plaintiffs, Jane Doe 1 and Jane Doe 2, reside in England and have two children who were both conceived by means of artificial insemination with semen purchased from the Defendant Xytex Corporation. The Defendant Xytex Corporation is a for-profit sperm bank with its principal place of business in Georgia. It is owned by the

Defendant Xytex Cryo International LTD. The individual Defendants were associated with the Atlanta office of Xytex in various ways.[1]

On October 18, 2000, James Aggeles applied to be a sperm donor with Xytex.[2] On his application, Aggeles claimed that he had a Bachelor's Degree, a Master's Degree, and that he was working toward his Ph.D. in artificial intelligence.[3] None of this was true, however, as Aggeles had actually dropped out of school at that time.[4] Prior to applying to be a sperm donor, Aggeles had also been hospitalized and diagnosed with psychotic schizophrenia, narcissistic personality disorder, and significant grandiose delusions.[5] But during Aggeles' first visit to Xytex, the Defendant Hartley suggested to him that more educated donors did better selling their sperm.[6] As a result, Aggeles filled out his application falsely by inflating his educational background and lying about his mental health history.[7]

---

[1]    Compl. ¶¶ 1-9.

[2]    Id. at ¶ 12.

[3]    Id. at ¶ 13.

[4]    Id. at ¶ 21.

[5]    Id. at ¶ 20.

[6]    Id. at ¶ 21.

[7]    Id.

Despite Xytex's claim that all applicants went through a rigorous qualification procedure that takes months to complete, including a medical review and regular updates to their medical and criminal histories, Aggeles was approved as a donor within two weeks.[8] The Complaint alleges that he was only given a ten minute physical examination, during which no physical or mental health history was discussed.[9] After Aggeles was approved as a sperm donor, he was hospitalized numerous times for mental health reasons, and was arrested on numerous occasions.[10]

Between 2000 to 2016, Aggeles became one of Xytex's most popular donors.[11] Families often desired the sperm of highly educated and accomplished people, and Xytex promoted Aggeles as such a donor based upon the information in his application. During those years, Aggeles became the biological father of at least thirty-six children through Xytex's sale of his sperm, including the Plaintiffs' two children.[12]

_____

[8]   Id. at ¶¶ 18, 22.

[9]   Id. at ¶ 22.

[10]   Id. at ¶ 23.

[11]   Id. at ¶ 24.

[12]   Id.

The Plaintiffs, a same-sex couple from England, had first heard about Xytex through a friend, and they began searching for potential donors on the Xytex website. When they came across Aggeles' profile, known as Donor #9623, they chose him as their donor because he "ticked every single box," meaning that he was healthy, well educated, and supposedly had a high IQ. The Plaintiffs called and emailed Xytex to inquire about Aggeles' sperm, and they were told that Aggeles' sperm was extremely popular and rarely available. As a result of Xytex's representations, the Plaintiffs purchased Aggeles' sperm and the Plaintiff Jane Doe 1 gave birth to their first child on February 28, 2012. Approximately two and a half years later, again using Aggeles' sperm, Jane Doe 1 gave birth to their second child on February 22, 2015.[13]

On July 27, 2014, when Jane Doe 1 was pregnant with the Plaintiffs' second child, they were contacted by Angela Collins, a Canadian woman who had also been inseminated with Aggeles' sperm through Xytex. Collins told the Plaintiffs that all of the information in Aggeles' donor profile provided by Xytex was false. All of the information about Aggeles' educational and criminal history was easily accessible through a simple internet search, and further information could have been obtained by a simple background check.[14] As a result, the Plaintiffs filed the Complaint on May

---

[13]     Id. at ¶¶ 29-32.

[14]     Id. at ¶ 33.

4, 2016, alleging eleven different causes of action against the Defendants, including fraud, negligence, and breach of warranty. The Defendants now move to dismiss the Complaint for failure to state a claim.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[15] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[16] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[17] Generally, notice pleading is all that is required for a valid

---

[15]     Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[16]     Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[17]     See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

complaint.[18] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[19]

## III. Discussion

The Defendants' primary argument is that all of the Plaintiffs' claims are derivative of a wrongful birth action, and because wrongful birth claims are not recognized in Georgia, the Plaintiffs' claims must be dismissed. In other words, the Defendants argue that all of the Plaintiffs' claims fundamentally stand on the assertion that if the Plaintiffs had known the truth about Aggeles, the Plaintiffs' two children would not have been born. The Plaintiffs, for their part, argue that this case is not one for wrongful *birth*, but rather for wrongful *conception*.

In Georgia, wrongful conception claims generally arise when a sterilization or abortion procedure goes wrong and a live birth unintentionally results.[20] In such a case, the measure of damages allows "recovery of expenses for the unsuccessful medical procedure which led to conception or pregnancy, for pain and suffering,

---

[18]     See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[19]     See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

[20]     Fulton-DeKalb Hosp. Auth. v. Graves, 252 Ga. 441, 442 (1984).

medical complications, costs of delivery, lost wages, and loss of consortium."[21] By contrast, wrongful birth claims normally arise when the parents contend they would have aborted the child if they had been fully aware of the child's condition.[22] While wrongful conception claims have been allowed in Georgia, wrongful birth claims have not.[23] The Plaintiffs argue that the functional differences between these two torts are (1) the timing of the tort (i.e., pre- or post-conception), and (2) whether a defendant's actions directly or indirectly caused the injury. According to the Plaintiffs, when the wrong occurs before conception and directly causes the harm, as in failed sterilization cases, the tort is allowed. And when the wrong occurs after conception and indirectly causes the harm, as in failure-to-diagnose cases, the tort is disallowed.

The Plaintiffs are incorrect. The reason why Georgia courts have looked on wrongful birth claims with disfavor is not because of the timing of the tort or the causal link between the defendant and the harm.  The true difference between the two torts is the measure of damages. Wrongful birth claims are disfavored because they

---

[21]     Id. at 443.

[22]     Atlanta Obstetrics & Gynecology Grp. v. Abelson, 260 Ga. 711, 713 (1990).

[23]     Id. at 714; Campbell v. United States, 962 F. 2d 1579, 1583 (11th Cir. 1992) ("In the instant case, while Georgia has a statute which permits injured parties to recover for medical malpractice committed by private parties, this statute does not permit recovery for the tort called wrongful birth.").

require the court to decide between the value of a life with disabilities and the value of no life at all. The Georgia courts are "unwilling to say that life, even life with severe impairments, may ever amount to a legal injury."[24] In this case, the Plaintiffs essentially claim that had the Defendants been truthful with them about Aggeles' history, they would not have used his sperm and their children would not have been born.

The Plaintiffs attempt to mask this truth by describing the Defendants as having "exposed Plaintiffs and their child to [Aggeles'] traits through their misrepresentations."[25] But a genetic disease is not the same as a virus or a bacteria. Avoiding "exposure" to Aggeles' various mental health problems would not mean the Plaintiffs' two children would be healthier; it would mean they would not exist. This is a wrongful birth claim, and it is not allowed in a diversity case applying Georgia law.

---

[24]   Abelson, 260 Ga. at 715.

[25]   Pls.' Resp. to Defs.' Mot. to Dismiss, at 15 [Doc. 13]. While the Court does not need to address them here, there are also numerous causation problems with the Plaintiffs' argument.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 12] is

GRANTED.

SO ORDERED, this 17 day of March, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge